We are ready for round two. The court calls Alvarez v. Lynch, Mr. Murray. Good morning owners and may it please the court. My name is Brian Murray and I represent, along with my co-counsel Mark Stevens, the petitioner in this matter, Mr. Gabriel Santos Alvarez. Mr. Santos asked this court to grant his petition for review because Virginia public record forgery is not an aggravated felony offense relating to forgery. The generic definition of forgery offered by Mr. Santos and adopted by the immigration judge and the Board of Immigration Appeals in this case derives from this court's decision in United States v. Jones, this court defined forgery as the fraudulent making or alteration of a writing to the prejudice of another man's rights or the false making or material altering with intent to defraud of any writing which, if genuine, might apparently be of legal efficacy or the foundation of legal liability. Why didn't that just match up with the generic definition of forgery under the federal statute? Your Honor, the Virginia public record forgery offense is over broad with respect to this definition in three important ways. It does not require true false making. It does not require the intentional creation of a false writing and it also does not require the prejudice to another's rights. In the first regard, it does not require false making. Jones defined a false making as one which purports to be the writing of another person than the actual maker. It does not include mere false statements whether or not they're material. It does not extend to mere false statements within the writing but it has to be an issue of the genuineness of the execution of the writing and which means that it has to be, the document has to purport to be written or created by a person other than the actual maker. And a comparison between this court's, the facts of the case in U.S. v. Jones with the facts of a Virginia court case in Rodericka as v. Commonwealth is instructive. In Jones, the defendant in that case had supplied certain information, altered information in an accounts payable system so that the company would issue checks to an improper payee. Similarly, in Rodericka's, the defendant had provided false information to an officer and that officer then took that information and created a summons. In Jones, this court concluded that that wasn't a truly false making because the company had actually correct. And in Rodericka's, he allegedly signed his own name. If he'd signed his brother's name, what would it have been? Your Honor, if Rodericka's decision had been dependent on him signing the document then there would be an argument that there was a second maker of the document but the Rodericka's court actually concluded that the offense was completed at the time that he sufficient evidence alone. And under this court's decision, recent decision in U.S. v. Vinson, it's to implement the categorical approach and to understand what's required. It's not enough to just look at what the court says it's implementing as the elements of the offense, but to actually have to see what is the minimum conduct required for the offense. In that case, this court found that the North Carolina assault statute required, ostensibly required intent but indeed that intent could be proven through culpable negligence. There's a similar dynamic in this case where the intent, the Virginia public record forgery offense does not require true intent. It only requires that the person offer this false information to the officer knowing that he's creating a summons, which is a knowing mens rea obviously less than the mens rea of intent. Thirdly, it does not, the Virginia public record forgery offense does not require prejudice to another's rights. It does not, what that means is that it, very clearly in Campbell v. Commonwealth, the court explicitly said, this Virginia court explicitly said that it does not require prejudice to another's rights. That's good law in Virginia. That's unlike other forgery statutes and others do require prejudice to another's rights. And this is an important element because if you look at, well first of all, the only court, circuit court to have really deeply examined this issue that we're discussing today was the Ninth Circuit in Viscara, Iowa of E.B. Casey. And in that case, the court found that forgery is a crime aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity. That view of forgery in the generic form is consistent with a textualist approach and a review of the statute shows that it appears in a list of items, commercial bribery, forgery, counterfeiting, and commercial, economic in nature, and thus it's appropriate that there be a generic form. If Mr. Murray, if we agree with you, and I don't think there's any dispute about the fact that at least with respect to the direct, the elements of forgery that the immigration judge suggested that the statute sweeps more broadly than the generic form of forgery. But of course, we've got this language that talks about relating to forgery, which suggests a much broader you know, category of offenses that might fall within its reach. So what are we supposed to do with that language? Yes, Your Honor, I think that there's no question that the relating to language is intended by Congress to broaden the applicability of this provision to other offenses, but it's not such to broaden it such that there's no limit. Don't recall the exact quote. Before you even get to that, why shouldn't we leave it to the BIA to figure this out in the first instance, particularly given the Supreme Court's recent pronouncement on this very question? Your Honor, for a few reasons. First, Your Honor, this is a matter that is an issue of the plain meaning of the statute. Relating to has an object, it relates to an offense of forgery. Well, but relating to, that's a matter of degree, and so where do we draw the line? No, I understand, Your Honor, but the Malooly decision, which is ostensibly the reason. I'm glad you pronounced that because I wasn't sure I was going to get that right. Malooly decision ostensibly is the reason for the government's seeking remand in this case. That did not change anything with regard to the analysis. It is an example of a correct analysis, but indeed the Malooly decision upheld 50-year-old BIA precedent decision, and there are other precedent decisions of the BIA that have made this reasonable interpretation, the correct interpretation of relating to, and the Ninth Circuit also has insisted that relating to obviously connects to ancillary activities. It connects to so that it could be relating to if you possessed a forged instrument or you knowingly used a forged instrument, uttered a forged document, or an accessory to forgery. Those are all ancillary activities, but nonetheless, they don't permit the court or the board or the agency to ignore the rest of that statute, and indeed they did not. They applied a categorical approach, but then they discarded it, and that's the Board of Immigration Appeals as well as the Immigration Court applied a categorical approach and found that the generic offense was as we've defined it, and found that it was overbroad, but then said the relating to nonetheless allows us to find that this is a forgery. Is there any contention that because of the use of relating to that that suggests a broader analysis beyond the categorical approach, you can actually look to the facts and circumstances of the offense? No, Your Honor. We would insist that the categorical approach, the default position, when considering whether or not something is a conviction, it begins with the categorical approach, but the relating to language certainly says that it must have some link to something, and if it's an impermissible, we would argue there's an impermissible interpretation of that statute to say that we can say that it doesn't have to have any link to forgery, and there's no standard set out by the Board of Immigration Appeals decision for what relating to is, and they had their opportunity to, this is not like an INS Ventura situation where they did not have the opportunity to consider the issue in the first instance. This was an issue that was front and center and considered at each level, both at the Immigration Court level, Board of Immigration Appeals level, and they well considered it. Malouli dealt with a carve out to what has historically been the general interpretation of the relating to language that dealt specifically with a paraphernalia offense. It overturned Martinez-Espinosa, which was a derogation of their general rule that is derived from matter of polis. The general rule that the Board of Immigration Appeals has followed has been the one consistent with the plain meaning of the statute, which is that relating to must be linked to what follows from relating to. It cannot, and so it does invoke, it doesn't include ancillary activities. It does include parties that, you know, that have some, bear some relationship to a forgery at some point, either forgery as Vizcarra Ayala says, either forgery or in Kuwait forgery, but in some way it's similar to an approach that, you know, this court overturned in the matter of Silva-Trevino, where you apply what looks like a categorical approach, but then you just discard the categorical approach. That's not a permissible interpretation of the statute. Your Honor, but returning to those three ways in which the offense is overwrought, it's important to note that this court has already said in U.S. v. Vinson that intent cannot, even where the statute says that there is an intent required, if the case law says that that can be established by proof of culpable negligence, that is not, that is still overwrought, and that is exactly what is present here. Rodriguez shows that they are prosecuting cases of individuals who have simply orally provided false information to an officer at the time he's issuing traffic summonses. This is not, this is a far field and in no reasonable interpretation is this offense even relating to forgery, but that's what's at stake in this case. I'll reserve the balance of my time. All right, thank you. Ms. Greer. May it please the court, my name is Christina Greer on behalf of the United States Attorney General Loretta Lynch. The government urges the court to remand this case to the Board of Immigration Appeals for it to reconsider the relating to language in light of the Supreme Court's decision in Malooly v. Lynch. However, if the court concludes that remand is not appropriate, the government alternately asserts that under de novo review, the offensive issue does categorically relate to forgery. Greer, why should we consider that argument given that you or somebody at the department decided not to brief it? That is correct. What happened is at the time of briefing, well, as you can tell from the month after the board's decision came out, Malooly was issued and so our office, similar to the board, was hung up on the relating to language and it wasn't until preparing for oral argument that it became clear that this statute does relate. I guess I don't understand that because we, a panel of this court, denied the motion to remand in the first instance, so that should have been a signal to somebody that we were interested in the merits of the case and yet you or someone in the department essentially thumbed its nose at the court and said we don't care what you think, we're just going to brief what we what we want to do and that doesn't seem to be to me to be appropriate. And we understand and at that time that's what we thought was the proper course. We did not, it did not appear at the time that a merits argument was tenable. Virginia defines forgery as the false making or materially altering with intent of the broad of any writing which, if genuine, might apparently be of legal efficacy or the foundation of legal liabilities according to Fitzgerald. Why is that definition, why does that definition not match up to the federal definition? What's different? It does. The public records forgery statute does match up to both of the definitions set forth in United States versus Jones that petitioner described. First, he identified three ways in which the public records forgery statute differed but those, upon a rereading of Rodriguez, those are not entirely accurate. They do match this statute. The first was that this, he argued that the Virginia statute does not require a false document but a mere false statement in the document. This is a misreading of Rodriguez. As the court stated in Rodriguez, by providing another's name to the officer, Rodriguez engaged in the creation of what was an inherently fraudulent document as it was not what it purported to be, a summons issued to Rodriguez and was instead a summons issued to his brother. Virginia courts have further distinguished Rodriguez from cases where mere false statements were involved. In Brown versus Virginia, the defendant took advantage of a loophole in or that allowed him to obtain a flight voucher for being bumped from a flight before he'd actually paid for the initial flight. And the court stated that the vouchers were what they purported to be and so were not forgeries unlike the summons in Rodriguez. That was further explored in Henry versus Virginia where the defendant provided false asset information to a court clerk who then included that information on a form assessing his liability or his eligibility for services for indigent defendants. And the court distinguished Henry's conduct from Rodriguez's conduct stating that Rodriguez provided false and fraudulent information in order to create summonses that were entirely fraudulent and not authentic. The summonses themselves were lies. And so a false document is required or the creation of a false document is required under this statute. The second element that petitioner stated was not required is prejudice to another person's right. And that is as he stated at page 17 of the record, at common law prejudice to another man's right was assumed when the object of the forgery was a public record. And finally, the third element, the intent to defraud element, petitioner alleged that it does not meet the generic, that the statute here does not meet the generic definition because in Rodriguez mere knowledge was sufficient. Knowledge that the officer then used the false name to create the summons. But that's not actually what the court said. The court identified Rodriguez's knowledge of the false name that he gave to draft the summons as one factor supporting a finding that Rodriguez had the intent to defraud. It went on to say that the fact that he provided false information with the purpose to avoid being charged with the traffic offenses demonstrated that he intended to defraud. And so all three of the missing elements are present in Rodriguez. And the reason we're looking to Rodriguez in the first place is because under the categorical approach in the immigration context, the question is what's the minimum conduct punishable under this statute? And petitioner has pointed to Rodriguez as being the minimum conduct punished and is stating that that conduct does not meet these generic elements. The conduct in Rodriguez does match all of the generic elements. I want to go back to what Judge Diaz asked in the first place because your brief, the government's brief also doesn't say any of that. Correct. No merits argument at all, nothing that you just argued, no mention of Rodriguez at all in the government's response brief even though it's what the petitioner had argued. So my question is, what are we to do with that? If the petitioner had put in a 28J letter a completely new argument that petitioner had not put in any of his briefs, what would the government be saying? The government would be arguing waiver. All right, so why has the government not waived your argument here? What can we do with that? Again, we're almost throwing ourselves on the mercy of the court because there is an argument for waiver here. However, if the court does not think that remand is appropriate, then the court will have to reach the merits argument and this information is important for the court to consider. Additionally, we did file a 28J letter so that this would not be a brand new argument, an oral argument. As soon as it became apparent that this needed to be put forth, we did file a 28J letter and petitioners responded to that 28J letter. And one of the reasons for having the argument or for having the possibility of waiving arguments is because there's potential prejudice to the argument and they did have time to respond to that 28J letter and they did file a response on Friday. And you're in a really bad position because you didn't write the brief. Mr. Platt did. But we are from the same office. Not a full house over at your side of the table over there. Well, Ms. Graff, I think you understand that we're not happy with the way this case has been presented and it seems a bit unfair that Mr. Murray now at the last minute has to respond to these arguments and maybe there's something that we should do about that. You said that he filed a response via letter. That may not be sufficient. Maybe we'll allow the filing of further briefs, but I think you need to go back to your folks, Mr. Platt, whoever else needs to be alerted to this, that this is not the way I would hope the government deals with these issues. And that's not to say that your point isn't well taken about the impact of Lely. It's a relevant case, no question about it, but a panel of this court had decided the matter. There was no need to consider the issue here and I get that point, but I think the government's put everybody in a bit of an awkward position by the way it's briefed these issues. But let me get back to the merits of this case. So essentially you're saying that we did not reach the relating to argument based on the fact that the Virginia statute matches up with the generic common law definition of forgery. Is that correct? I agree with that and we need to get to the relating to portion of the analysis and we don't find persuasive the need to return the case back to the BIA to decide that issue. What's your argument with respect to that? Our argument would be remand, but I think you've said that before. But our argument would be that this statute does relate to forgery and the fact that there's a potential one-off case where perhaps it's not generic forgery, it would still relate to forgery. Is there any argument that because the language uses relate to that it invites a comparison of some kind that warrants looking beyond the elements of the statute to the actual evidence? That has been found in other sections of the aggravated felony definition. For example, in Nijhawan the Supreme Court considered another subsection that related to I believe it's fraud where the amount involved was $10,000 or more and the language that involved in that $10,000 or it involved a $10,000 loss to the victim and the Supreme Court said that that language did invite a circumstance specific inquiry to determine whether or to go beyond just the categorical approach to determine whether there was a $10,000 loss present. I don't know of a case where that has been replied or applied to relating to. However, that's not to say that it hasn't been. But the Third Circuit in Dimsky versus I can't remember the second, Drake I believe, did extend relating to beyond cases where there was a mere just forgery. It did say that this is very broad and it would have covered a circumstance like this where if what you're saying if it sounds like what you're saying is that if here the summons was not considered a forgery that sounds like what you were talking about if the court found that that was not sufficient for common law forgery under that Third Circuit decision it would be because it took a very broad reading and said that it doesn't necessarily have to meet up with every element of forgery in order to be forgery. I find it a little bit curious and I understand with the categorical approach analysis we're just looking at elements we're not looking behind. But all we have in the record we don't know what this guy did other than he was charged with this public record forgery. Correct. Would it have helped us to know that? Using just the... I mean because he's arguing about it being overbroad I'm not allowed to answer that question if I didn't know what he did. And generally the facts of what happened aren't looked to. It's unless Tishner uses what happened in his case as an example of here this was applied over broadly and that's what petitioner is using Rodriguez as evidence of to show this is the minimum conduct that makes the statute overbroad. But generally we don't know the fact or we sometimes do if they can be gleaned from the conviction record but here we don't know the facts. But that's what that's what he's arguing that it's overbroad. I don't know how to answer that question other than just match up the elements. Exactly and that's what the categorical approach does. If there are no further questions. Do you have anything further? Oh no your honor. Thank you. Thank you. Mr. Stevens. Yes your honor. Good morning. My name is Mark Stevens. I also represent the petitioner Gabriel Santos Alvarez. I believe Judge Floyd has hit on the serious issue in this case. The elements as outlined by Rodriguez sound similar to the elements described by Jones. The problem is the categorical approach doesn't accept creative state labels for crimes. Categorical approach pierces through what states call crimes as to the actual elements. Example of this comes from this court's recent decision in US v. Vinson, the decision from last year. The statute said it required intent but judicial decisions had said that intent can be proven through culpable negligence. So this approach lines up with what the Supreme Court has said about the categorical approach in Gonzalez v. Duenas Alvarez. The Supreme Court said that we look to you know you need to you need you look at whether the statute has been applied to reach conduct broader than the generic forgery. You know the generic elements of the offense. In Moncrief the Supreme Court said that you look to the minimum conduct. So so potentially that means ignoring what the state's what the state court says the elements are and look into the conduct that that the state is criminalized with that offense. But on this record we can't do that. Correct and that's actually a good thing because the Supreme Court does not want immigration courts to retry the facts of criminal cases potentially years down the road. Sometimes convictions are brought up in immigration court from 20 or 30 years ago and the witnesses are have moved on to other things. Sometimes people are unrepresented. Sometimes they are detained. They don't have access to to witnesses. Well doesn't that doesn't that argument cut against you because we don't know we can't evaluate the over-broadness. So what we're left with is just this record and we just match up the elements. That's the end of the day. That's a different approach than was taken by Vinson. And it that's different from the the approach described by the Supreme Court in in Moncrief and Cuenas Alvarez. We do know the outer limits of the offense from Virginia appellate law and we know what Virginia has said about this crime. That's easier than trying to relitigate the facts of the criminal case in a setting that's that's not well suited to that. So in this case there was no question below that this that the categorical approach applied. The IJ didn't say that. The board didn't say that and the government hasn't said that today. So the reasons for the categorical approach are well described in in DECOMP and as your honor wrote in Omar Garib adopting the the reasoning of of DECOMP there are very good reasons for the categorical approach. The the uh other question uh which Judge Diaz asked earlier why not remand this case? It would be inappropriate as a matter of law under the ordinary remand rule which comes to us from the Supreme Court in INS V. Ventura. If the board hasn't ruled on an issue then the circuit court should remand to the board for an issue that is not appropriate. So the question is why not remand to the board for an initial determination? That's not the case here. They ruled on the sole issue. In the government's brief they argued extensively that Malouli changed the analysis. That's not the case. Malouli itself was based on long-standing board precedent and the plain language of the statute. Malouli cited a 1965 decision matter of Paulus which is consistent with with Malouli's reasoning. The only issue in Malouli was that for some reason the board had the board had deviated from this this reasoning when it came to paraphernalia convictions. But the board said that Congress and the BIA have long required a link between the state crime and a specific federally controlled substance. So that's all we're saying here is that the crime needs to have a link to a true generic forgery. Judge Diaz said earlier that there's no question that the statute here reaches conduct broader than generic forgery. That's the end of the analysis. The question is over at that point. The relating to language has no role to play because this isn't some sort of ancillary activity such as trafficking in a forged document or use of a forged document. This is simply forgery, purported forgery. It's an overbroad version of forgery. So the relating to language is not particularly relevant to this case. The other reason not to remand is that it will prejudice Mr. Santos. He's been released from detention recently but he's still under house arrest for part of the week. He checks in with ICE every Monday which takes several hours. He's unable to hold down a job because of these reporting requirements. He's not allowed to leave the state of Virginia, D.C. and Maryland without permission. He wears an ankle GPS tracking device. And we believe that if this case is remanded without deciding the merits that the board may waste further time misapplying the case. One last point as a matter of fairness. We informed the board in advance that this was a difficult case because there's not a lot of precedent on forgery and we asked for a panel decision. The board denied our request and gave it the typical single member decision. We believe they may have made the right decision if they had given us a panel decision but they declined to do that. And so I don't believe the board should be rewarded with a second chance at this case. Mr. Stevens, do you think that you've had a fair opportunity to respond to the arguments that the government has now presented on the merits? There is a fundamental problem with the government's position in that they're advocating an outcome that would violate Chenery Doctrine. So there are problems with the government's position that we've not had a chance to raise yet. All right. Thank you, Mr. Stevens. Thank you, Your Honor. All right. The court will come down and recounsel and proceed to our next case.
judges: Albert Diaz, Henry F. Floyd, Stephanie D. Thacker